## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HENDERSON GREEN,** | : | **CIVIL ACTION NO. 1:20-CV-495** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **LAZER SPOT, INC.,** | : | |
| | : | |
| **Defendant** | : | |

## <u>MEMORANDUM</u>

Plaintiff Henderson Green filed this action against his current employer, defendant Lazer Spot, Inc. ("Lazer Spot"), alleging Lazer Spot is violating federal and Pennsylvania law by failing to pay Green overtime. Lazer Spot moves for summary judgment pursuant Federal Rule of Civil Procedure 56. We will grant Lazer Spot's motion.

## I. __Factual Background & Procedural History__[1]

Lazer Spot provides transportation and yard management services to a variety of manufacturing, warehousing, and distribution facilities in central Pennsylvania.  (See Doc. 25 ¶¶ 1, 2, 18, 39-41, 45, 50-52, 57-58; Doc. 30-1 ¶¶ 1, 2, 18, 39-41, 45, 50-52, 57-58; Doc. 25-45 ¶¶ 3, 5, 12-13; Doc. 25-30, Mullen Dep. 17:7, 17:13, 25:24).  The exact nature of the services Lazer Spot provides varies slightly from client to client, but the core of Lazer Spot's business is managing the flow of semi-truck trailers for their clients' facilities.  (See Doc. 25 ¶ 2; Doc. 30-1 ¶ 2; Doc. 25-3 at 9).  On the ground, this management consists of two key activities: "spotting"— moving loaded and unloaded trailers between two points within a client's facility— and "shuttling"—moving loaded and unloaded trailers over the public roads to and from a client's facility.  (See Doc. 25 ¶ 2; Doc. 30-1 ¶ 2; see also Doc. 25-26, Dundore

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  M.D. PA. L.R. 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried.  Id.  Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts.  (See Docs. 25, 30-1).  To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

In addition to providing responses to each of Lazer Spot's statements of fact, Green's responsive statement includes 21 paragraphs styled as "Plaintiff's Counter Statement of Facts."  Neither Federal Rule of Civil Procedure 56 nor Local Rule 56.1 authorizes this filing, and Green did not request leave of court therefor.  Although these additional paragraphs do not conform to our rules, we have examined them; the statements contained therein do not affect our analysis of Lazer Spot's motion.

Dep. 10:11-13:20).  Lazer Spot is licensed by the United States Department of Transportation ("DOT") as a federal motor carrier and registers biannually with the DOT's Federal Motor Carrier Safety Administration.  (See Doc. 25 ¶¶ 1, 3; Doc. 30-1 ¶¶ 1, 3).

Lazer Spot utilizes a fleet of trucks to meet its clients' yard management requirements.  The two principal truck models in Lazer Spot's fleet are jockey trucks, which are small, single-seater vehicles intended primarily to move trailers around a client's facility; and day cab trucks, which are larger, two-seater vehicles intended primarily to move trailers over the public roads.  (See Dundore Dep. 10:6-13:20; Mullen Dep. 19:23-20:13).  Jockey trucks and day cabs are both licensed, insured, and tagged to allow them to operate legally on public roads.  (See Doc. 25 ¶ 5; Doc. 30 ¶ 5).  Nonetheless, day cabs handle the vast majority of over-the-road trips.  (See Dundore Dep. 10:14-20; Mullen Dep. 33:8-19).  In contrast, jockey trucks only take short, almost incidental trips over the public roads.  (See Dundore Dep. 10:21-11:7; Mullen Dep. 33:8-19).  For example, Lazer Spot employees operating jockey trucks at the Nestlé Purina facility in Mechanicsburg, Pennsylvania, regularly move trailers one-third of a mile up Brackbill Boulevard, a public road, from the Nestlé Purina factory to a nearby warehouse.  (See Doc. 25 ¶ 27; Doc. 30-1 ¶ 27; see also Doc. 25-1, Green Dep. 85:5-86:18; Mullen Dep. 16:24-17:13).

Lazer Spot maintains a regional pool of drivers from which the company assigns individual drivers to its clients' facilities.  (See Doc. 25 ¶ 18; Doc. 30-1 ¶ 18).  The parties dispute how precisely the assignment system works.  Lazer Spot insists that drivers may be assigned any type of driving at any facility within a 100-mile

radius surrounding Lazer Spot's regional office in Carlisle, Pennsylvania. (<u>See</u> Doc. 25 ¶¶ 18, 20-21). Green contends that there are certain unwritten classifications and understandings curtailing the range of locations and types of driving to which a particular employee is assigned. (<u>See</u> Doc. 30-1 ¶¶ 18, 20, 23; <u>see also</u> Green Dep. 111:11-119:7). The overall liquidity of the system, however, is not in dispute. Some drivers are assigned permanently to one facility. (<u>See</u> Dundore Dep. 14:15; Doc. 25-46 at 13). Others are shuffled from facility to facility as need arises. (<u>See</u> Doc. 25 ¶ 20; Doc. 30-1 ¶ 20; <u>see also</u> Mullen Dep. 16:8-19:22). Some alternate driving jockey trucks and driving day cabs. (<u>See</u> Mullen Dep. 16:8-17:23).

Lazer Spot hired Green in October 2017. (<u>See</u> Doc. 25 ¶ 20; Doc. 30-1 ¶ 20). Green's job title and responsibilities are disputed by the parties. Lazer Spot describes Green as a "truck driver" who may be called upon to drive any truck in the Lazer Spot fleet. (<u>See</u> Doc. 25 ¶¶ 6, 8, 23). Green understands himself to be a "yard jockey," a position whose responsibilities only rarely extend beyond the privately owned loading areas, staging areas, and parking lots surrounding client facilities. (<u>See</u> Doc. 30-1 ¶¶ 6, 8, 23, 33, 35; <u>see also</u> Green Dep. 27:25-28:14, 47:19-20, 146:24-148:11). There is no dispute that Green's main day-to-day activity is operating a jockey truck; that he uses the truck to "jockey" trailers (some of which are loaded with client property) in and out of loading bays at client facilities; and that he occasionally moves trailers over public roads when he works at certain facilities. (<u>See</u> Doc. 25 ¶¶ 27-30; Doc. 30-1 ¶¶ 8, 23, 27-30; Green Dep. 147:11-148:11; Dundore Dep. 11:8-13:20; Mullen Dep. 21:18-22:15, 24:14-26:8, 28:24-29:14, 44:18-45:9). However, the parties dispute where Green transports trailers over public

4

roads, how frequently he transports trailers over public roads, and whether Green's trailers are exclusively unloaded or are occasionally loaded with client property. (<u>See</u> Doc. 25 ¶¶ 27-31; Doc. 30-1 ¶¶ 27-31).

As a condition of employment, Green must follow certain safety protocols. He conducts pre-trip safety inspections each time he operates Lazer Spot's equipment. (<u>See</u> Doc. 25 ¶ 13; Doc. 30-1 ¶ 13). He is obligated to maintain DOT compliant licensing and medical certification, and to take random drug tests, (<u>see</u> Doc. 25 ¶ 12; Doc. 30-1 ¶ 12), and is subject to termination should he engage in unsafe conduct while driving, (<u>see</u> Doc. 25 ¶ 14; Doc. 30-1 ¶ 14). Green participated in at least one annual safety certification and signed documents indicating his attendance at periodic safety trainings, though Green now denies that the safety trainings actually occurred. (<u>See</u> Doc. 25 ¶¶ 15-16; Doc. 30-1 ¶¶ 15-16; <u>see also</u> Green Dep. 59:3-11).

Between 2017 and commencement of the present lawsuit, Green operated a jockey truck for Lazer Spot at a minimum of nine facilities, (<u>see</u> Doc. 25 ¶ 19; Doc. 30-1 ¶ 19), including the Reckitt Benckiser distribution center in Mechanicsburg, Pennsylvania, (<u>see</u> Doc. 25 ¶ 40; Doc. 30-1 ¶ 40); the Nestlé Purina facility in Mechanicsburg, Pennsylvania, (<u>see</u> Doc. 25 ¶ 45; Doc. 30-1 ¶ 45); and the Hershey distribution center in Palmyra, Pennsylvania, (<u>see</u> Doc. 25 ¶ 51; Doc. 30-1 ¶ 51). Green currently works driving a jockey truck primarily at the XPO Harrisburg (Amazon) facility in Harrisburg, Pennsylvania. (<u>See</u> Green Dep. 82:7-13, 113:4-10). Green often works more than 40 hours in a week. (<u>See</u> Docs. 25-41, 25-42, 25-43, 25-44). Lazer Spot pays Green the same regular hourly wage for each hour he works

even during those weeks where he works more than 40 hours—*i.e.*, Lazer Spot never pays Green any overtime.  (<u>See</u> Doc. 25 ¶ 63; Doc. 30-1 ¶ 63).

Green filed the present lawsuit on March 27, 2020, alleging Lazer Spot violated federal and state law by failing to pay him overtime.  On February 26, 2021, Lazer Spot filed a motion for summary judgment on both the federal and state claims.  The motion is fully briefed and ripe for disposition.

## II.   <u>Legal Standard</u>

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  FED. R. CIV. P. 56(a).  The burden of proof tasks the nonmoving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  <u>Pappas v. City of Lebanon</u>, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  The court is to view the evidence "in the light most favorable to the non[]moving party and draw all reasonable inferences in that party's favor."  <u>Thomas v. Cumberland County</u>, 749 F.3d 217, 222 (3d Cir. 2014).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the nonmoving party on the claims.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-57 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-89 (1986).  Only if this threshold is met may the cause of action proceed.  <u>See Pappas</u>, 331 F. Supp. 2d at 315.

III.   **Discussion**

A.   **The MCA Exemption**

Green alleges Lazer Spot is violating both the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 201 *et seq.*, and Pennsylvania Minimum Wage Act ("PMWA"),

43 PA. STAT. AND CONS. STAT. ANN. §§ 333.101-.115.  The FLSA obligates employers

to pay overtime compensation to employees who work more than 40 hours per week

unless the employee falls into one of several statutory exemptions.  See 29 U.S.C.

§ 207(a)(1); see also Packard v. Pittsburgh Transp. Co., 418 F.3d 246, 250 (3d Cir.

2005).  Employees whose work is governed by the Motor Carrier Act ("MCA") are

exempted from the FLSA's maximum-hour rule.  See 29 U.S.C. § 213(b)(1).  Courts

commonly call this exemption the MCA exemption.  See, e.g., Resch v. Krapf's

Coaches, Inc., 785 F.3d 869, 872 (3d Cir. 2015).  The PMWA is the state-level

equivalent of the FLSA and includes an identical exemption for employees

governed by the MCA.[2]

The MCA exemption applies to employees whose "qualifications and

maximum hours of service" are regulated by the DOT "according to the provisions

of section 31502 of Title 49."  29 U.S.C. § 213(b)(1).  Under Section 31502, the DOT

has regulatory authority over transportation companies "described in [49 U.S.C.

---

[2] The PMWA explicitly incorporates the same exemption for motor carriers as the FLSA.  See 43 PA. STAT. AND CONS. STAT. ANN. § 333.105(b)(7); see also Resch, 785 F.3d at 871 n.4.  The analysis under the two statutes is identical.  See Mazzarella v. Fast Rig Support, LLC, 823 F.3d 786, 790 n.5 (3d Cir. 2016).  Therefore, we need only consider whether Green qualifies for the MCA exemption to the FLSA to decide the present motion for summary judgment.  Green is either exempt from the maximum-hour rule under both laws or neither law.

§] 13501." 49 U.S.C. § 31502(a). Section 13501, in turn, grants the DOT jurisdiction over motor carriers transporting passengers, property, or both in interstate commerce. See 49 U.S.C. § 13501; Resch, 785 F.3d at 872. A motor carrier is "a person providing motor vehicle transportation for compensation." 49 U.S.C. §§ 13102, 31501. Once jurisdiction over a motor carrier is established, the DOT—not the FLSA—has the power to set the maximum hours of service for employees. See id. § 31502(b)(1).

In deciding if the MCA exemption applies, we are mindful of the United States Supreme Court's recent observation that the FLSA does not "pursue[] its remedial purpose at all costs." Encino Motorcars, LLC v. Navarro, 584 U.S. ___, 138 S. Ct. 1134, 1142 (2018) (internal quotation marks omitted). Courts are no longer to construe FLSA exemptions narrowly against the employer; instead, we now simply give exemptions a "fair reading." See id.; (cf. Doc. 31 at 3-4). A fair reading is "neither narrow nor broad" and recognizes both that employee rights are not the only rights at issue in FLSA cases and that employees' interests "are not always separate from [or] at odds with their employers' interests." Sec'y U.S. Dep't of Lab. v. Bristol Excavating, Inc., 935 F.3d 122, 135 (3d Cir. 2019).

Lazer Spot bears the burden of proving the MCA exemption applies to Green. See Clews v. County of Schuylkill, 12 F.4th 353, 359 (3d Cir. 2021). To carry this burden, Lazer Spot must establish (1) it is a motor carrier subject to the DOT's jurisdiction, see 29 C.F.R. § 782.2(a); (2) Green falls within a class of motor carrier employees the DOT regulates—i.e., he is a truck driver, driver's helper, loader, or mechanic, see 29 C.F.R. § 782.2(b)(1); Pyramid Motor Freight Corp. v. Ispass, 330

U.S. 695, 708 (1947); <u>Troutt v. Stavola Bros.</u>, 107 F.3d 1104, 1108 (4th Cir. 1997); and (3) the class of motor carrier employees to which Green belongs "engage[s] in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the [MCA]," <u>see</u> <u>Resch</u>, 785 F.3d at 872 (quoting 29 C.F.R. § 782.2(a)) (alteration in original).  Here, both parties agree Lazer Spot is subject to the DOT's jurisdiction.  (<u>See</u> Doc. 24 at 6; Doc. 31 at 5).  We thus address only the second and third requirements for the MCA exemption.

### B.    Class-of-Employee Analysis

The class-of-employee analysis requires us to make a threshold determination whether Green is a driver, driver's helper, loader, or mechanic. Courts identify the class of employee into which an employee falls by conducting an individualized analysis of the employee's job activities.  <u>See</u> <u>Troutt</u>, 107 F.3d at 1108 (citing <u>Pyramid Motor Freight</u>, 330 U.S. at 706-07).  Neither the name given to an employee's position nor the work they do controls this analysis.  <u>See</u> 29 C.F.R. § 782.2(b)(2); <u>Pyramid Motor Freight</u>, 330 U.S. at 707.  To be classified as a driver, there is no requirement that the employee spend measurable time in any given week engaging in driving activities.  <u>See</u> <u>Pyramid Motor Freight</u>, 330 U.S. at 707. An employee is a "driver" so long as a "substantial part" of the employee's activities meet the DOT's definition of driver.  <u>See</u> <u>id.</u> at 708.

DOT regulations define a "driver" as "an individual who drives a motor vehicle in transportation which is, within the meaning of the [MCA], in interstate or foreign commerce."  29 C.F.R. § 782.3(a).  Under the MCA, "[t]he term 'motor

vehicle' means a vehicle, machine, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway in transportation or a combination determined by the [DOT]."  49 U.S.C. § 13102(16).  The term "highway" is defined as "a road, highway, street, and way in a State."  Id. § 13102(9).  A driver operates a motor vehicle in interstate commerce when he personally makes interstate trips or participates in transportation within a single state that "forms a part of a 'practical continuity of movement' across state lines from the point of origin to the point of destination."  See 29 C.F.R. § 782.7(b)(1) (quoting Walling v. Jacksonville Paper Co., 317 U.S. 564 (1943)); Mazzarella, 823 F.3d at 791.  To qualify as a "driver" under the MCA, a driver need not spend all of their time driving in interstate commerce; they need merely possess a transportation duty "some of which is in interstate commerce."  See 29 C.F.R. § 782.3(a).

The parties dispute the designation of Green's position—i.e., whether he is a "truck driver" or "yard jockey"—but this is a dispute over job title, not job substance.  More importantly, the parties admit to facts establishing that Green operates a "motor vehicle" as defined by the MCA.  (See Doc. 25 ¶ 7; Doc. 30-1 ¶ 7), and also admit that Green drives this motor vehicle over public roads from time to time.  (See Doc. 25 ¶ 28; Doc. 30-1 ¶ 28; Green Dep. 85:5-86:15, 105:17-25).  The parties' sole substantive dispute is whether Green's actions in jockeying trailers around the yard and occasionally over public roads constitute driving in interstate commerce.  (See Doc. 25 ¶¶ 27-30; Doc. 30-1 ¶¶ 27-30).

We are mindful that Green only drove intrastate for Lazer Spot—he never crossed a state line.  (See Dundore Dep. 45:12-46:21; Mullen Dep. 40:10-18).

Nonetheless, intrastate transportation constitutes part of the practical continuity of movement of goods across state lines when a "fixed and persisting intent" to ultimately ship the goods out of state exists at the time of the transportation in question.  See Mazzarella, 823 F.3d at 792.  It is undisputed that the goods in the trailers being moved around the Reckitt Benckiser, Nestlé Purina, and Hershey facilities where Green worked are goods with defined out-of-state destinations or origins.  (See Doc. 25 ¶¶ 38-43, 44-45, 47-54, 55-57, 59-60, 62; Doc. 30-1 ¶¶ 38-43, 44-45, 47-54, 55-57, 59-60, 62).  Green asserts that he never transports any of those goods at the same time he is driving a motor vehicle on a public road.  (See Doc. 31 at 6, 8, 10; Doc. 30-1 ¶¶ 27-29).  But the DOT's definition of driver does not require transportation of goods over public roads.  See 29 C.F.R. § 782.3(a).  The definition merely requires the goods be transported in interstate or foreign commerce.  See id.

Even if Green is correct and he never drove on a public road pulling a trailer containing goods bound for interstate destinations, he admits to driving trailers with such goods around the yard at the Reckitt Benckiser, Nestlé Purina, and Hershey locations.  (See Green Dep. 128:12-129:22, 132:18-133:13).  After Green delivers these loaded trailers at their destinations within the yard, they are picked up by other trucks and transported to predetermined locations outside of Pennsylvania.  (See Doc. 25 ¶¶ 36-62; Doc. 31-1 ¶¶ 36-62).  By moving loaded trailers, Green acts as an intermediate, intrastate step in the goods' ultimate interstate journey, and thereby participates in interstate commerce.  See Mazzarella, 823 F.3d at 792; see also Burlaka v. Cont. Transp. Servs. LLC, 971 F.3d 718, 721 (7th Cir. 2020) (holding "spotters" (*i.e.*, yard jockeys) driving trailers carrying goods destined

for out-of-state delivery, even if purely intrastate, nevertheless have driven in

interstate commerce), <u>cert.</u> denied, 141 S. Ct. 1125 (2021).  There is no genuine

dispute of material fact.  Green falls squarely within the MCA's definition of driver.

###    C.    Scope-of-Work Analysis

The third and final step of our analysis asks whether the scope of work of a

"driver" for Lazer Spot includes engaging in activities directly affecting the safety

of operation of motor vehicles in transportation on the public highways of

passengers or property in interstate or foreign commerce.  <u>See</u> <u>Resch</u>, 785 F.3d at

872; 29 C.F.R. § 782.2(a)(2).  Unlike the class-of-employee analysis *supra*, we analyze

the scope of work of the employees on a class-wide basis.[3]  <u>See</u> <u>Resch</u>, 785 F.3d at

874.  The relevant inquiry is whether the plaintiff's class of employee "reasonably

could have expected" to engage in activities affecting the safety of operation of

motor vehicles in transportation on public highways of passengers or property in

interstate or foreign commerce.[4]  <u>See</u> <u>id.</u>  Courts have found a particular activity to

be within a plaintiff's expected scope of work, *inter alia*, when the plaintiff engaged

in the activity as part of his job in greater than *de minimis* fashion, <u>see</u> <u>Pyramid</u>

<u>Motor Freight</u>, 330 U.S. at 708; <u>Resch</u>, 785 F.3d at 875; <u>see also</u> 29 C.F.R. §

---

[3] Green contends the scope-of-work analysis should be conducted on "an individual basis."  (<u>See</u> Doc. 31 at 6 (quoting <u>Roberts v. Cowan Distrib. Servs., LLC</u>, 58 F. Supp. 3d 593, 608 (E.D. Va. 2014))).  But Green conflates analysis for determining whether Green is a driver, driver's helper, loader, or mechanic with the scope-of-work analysis.  While these analyses examine almost identical facts, they examine the facts from distinct perspectives.

[4] Courts occasionally reduce this review to a simple inquiry:  whether the relevant class of employees have a "reasonable expectation of driving in interstate commerce."  <u>See, e.g.</u>, <u>Resch</u>, 785 F.3d at 875; <u>Burlaka</u>, 971 F.3d at 721.

782.2(b)(3); when other members of the class engaged in the activity on a regular basis, see Resch, 785 F.3d at 873-74; Burlaka, 971 F.3d at 721; and when the plaintiff could be called upon to engage in the activity, even if he has not yet personally engaged in the activity, see Burlaka, 971 F.3d at 720-21; 29 C.F.R. § 782.2(b)(3).

Most aspects of our scope-of-work inquiry are not genuinely in dispute. Green and his coworkers regularly affect the safety of operation of their vehicles. They are required comply with DOT safety regulations by maintaining a Class A driver's license, keeping a clean driving record, and passing both a road test and a DOT physical. (See Doc. 25 ¶ 8; Doc. 30-1 ¶ 8). Green also performs pre-trip safety inspections, undergoes drug testing, and underwent at least one annual safety certification. (See Doc. 25 ¶¶ 12-13, 16; Doc. 30-1 ¶¶ 12-13, 16). There is likewise no genuine dispute that Lazer Spot's jockey trucks are "motor vehicles" within the ambit of the MCA exemption. (See Doc. 25 ¶ 7; Doc. 30-1 ¶ 7); see also McMaster v. E. Armored Servs., Inc., 780 F.3d 167, 170 (3d Cir. 2015); 29 U.S.C. § 207 note (Applicability, Liability of Employers). And as discussed *supra*, the loaded trailers Green jockeys around the yard are frequently either beginning or concluding their journey in interstate commerce. See *supra* at 10-12; see also Burlaka, 971 F.3d at 721 (holding sheer volume of interstate commerce flowing through facility demonstrated drivers engaged in spotting work possessed reasonable expectation of driving in interstate commerce). Green admits moving trailers loaded with clients' goods is part of his job expectations. (See Doc. 25. ¶ 35; Doc. 30-1 ¶ 35). There is thus no dispute that Lazer Spot drivers like Green reasonably expect to

affect the safety of motor vehicles involved in the transportation of property in interstate commerce.

Instead, the primary point of contention between the parties is whether Green and his coworkers had a reasonable expectation of driving "*over the public highways*." See Resch, 785 F.3d at 872 (emphasis added); 29 C.F.R. § 782.2(a)(2). For its part, Lazer Spot submits numerous documents Green signed acknowledging or implying his job included being available to transport client goods over public roads. (See Docs. 25-2, 25-7, 25-8, 25-40, 25-46; Doc. 25-3 at 11; Doc. 25-9 at 11-12; Doc. 25-35 at 2-5, 12-13, 16-27; see also Green Dep. 28:16-38:17, 44:13-58:18). Green rejoins that the documents do not describe the true scope of his employment and that, on the "limited occasions" he drove over public roads, he was not transporting client goods. (See Doc. 31 at 7-8). He supports this claim by pointing to representations made to him during his job interview, a statement by one of his supervisors, and the failure of Lazer Spot to produce paperwork proving he was moving client goods on the occasions he drove over public roads. (See id. at 8; see also Green Dep. 146:5-150:9; Dundore Dep. 10:8-20).

Regardless of Green's personal expectations or experiences, there is no dispute that Lazer Spot's jockey truck drivers, as a class, routinely transport goods over the public roads at the Reckitt Benckiser distribution center, (see Dundore Dep. 25:12-27:13; Doc. 25-33 ¶¶ 28-30), the Nestlé Purina facility, (see Mullen Dep. 32:23-33:3, 44:18-45:9; Dundore Dep. 28:19-29:17; Doc. 25-33 ¶¶ 25-27), and the Hershey distribution center, (see Mullen Dep. 18:11-23, 44:18-45:9; Dundore Dep. 20:22-21:15; Doc. 25-33 ¶ 33). Green worked at all three of these locations, (see Doc.

25 ¶¶ 27-29; Doc. 30-1 ¶¶ 27-29; Green Dep. 81:14-82:1), and he does not dispute his coworkers transported goods to or from these locations over public roads, (see Doc. 25 ¶¶ 27-29; Doc. 30-1 ¶¶ 27-29).  Green disputes the precise geographic range within which he could be called upon to work, but he concedes that the Reckitt Benckiser, Nestlé Purina, and Hershey locations are within the range; that he accepted the call to work at those locations in the past; and that he could be called to work at those locations in the future.  (See Doc. 25 ¶¶ 20-21; Doc. 30-1 ¶¶ 20-21).

Moreover, Green admits he "presumed" his job required him to be "ready, willing, and able to work" at the Reckitt Benckiser, Nestlé Purina, and Hershey locations and "to move these customers' goods over public roads at any time." (See Doc. 25 ¶ 32; Doc. 30-1 ¶ 32).  Green tenuously claims his "presumption" is not the same as an "expectation," (see Doc. 25 ¶ 32; Doc. 30-1 ¶ 32), but he fails to articulate a material difference between the two terms.[5]  To presume your job requires you to transport goods over the public roads is to possess a reasonable expectation you could be called upon to transport goods over the public roads.  See Burlaka, 971 F.3d at 721 (citing Morris v. McComb, 332 U.S. 422,423 (1947)).  Since Green's coworkers at certain locations regularly transport goods over public roads and Green admits he could be called upon to work at those locations, Green and his

---

[5] Indeed, according to the *Oxford English Dictionary*, to have a presumption of something *is* to have an expectation of it.  See *Presumption*, OXFORD ENGLISH DICTIONARY ONLINE, https://www.oed.com/view/Entry/150903?redirectedFrom= presumption#eid (last visited Dec. 5, 2021) (defining "presumption" to mean, *inter alia*, "[t]he action of taking for granted or presuming something; assumption, *expectation*, supposition" (emphasis added)).

class of employee all possess a reasonable expectation of transporting goods over public roads.  See Resch, 785 F.3d at 873-74.

IV.    **Conclusion**

The undisputed facts show Green meets all three requirements for applying the MCA exemption.  Green could be called upon to move trailers loaded with customers' goods in interstate commerce over the public highway each day of his employment with Lazer Spot.  As a result, at all times relevant to this litigation, Green was and is, as a matter of law, exempt from the FLSA maximum-hour rule codified in 29 U.S.C. § 207(a)(1).  We will grant Lazer Spot's motion (Doc. 24) for summary judgment.  An order shall issue.


                                        /S/ CHRISTOPHER C. CONNER
                                        Christopher C. Conner
                                        United States District Judge
                                        Middle District of Pennsylvania

Dated:    December 22, 2021